# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BENJAMIN STOKES, Individually and for Others Similarly Situated | **Case No. _____** |
| v. | Jury Trial Demanded |
| FAMILY CARE VISITING NURSE & HOME CARE AGENCY, L.L.C. | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### Summary

1.      Benjamin Stokes (Stokes) brings this class and collective action lawsuit to recover unpaid wages and other damages from Family Care Visiting Nurse & Home Care Agency, L.L.C. (Family Care).

2.      Family Care employed Stokes as one of its Patient Care Employees (defined below).

3.      Stokes and the other Patient Care Employees regularly work more than 40 hours a workweek.

4.      But Family Care does not pay them overtime wages for hours worked in excess of 40 a workweek.

5.      Instead, while labeling their pay as "hourly," Family Care in fact pays Stokes and the other Patient Care Employees on a piece rate basis, based on the number and type of patient contacts completed, but Family Care does not pay them overtime wages for the hours they work in excess of 40 in a workweek ("piece rate and no overtime pay scheme").

6.      In fact, Family Care often pays them a *lower* rate for hours worked in excess of 40 in a workweek.

7.      Family Care misclassifies Stokes and the other Patient Care Employees as exempt from overtime.

1

8.      But Family Care never paid Stokes or the other Patient Care Employees on a "salary basis."

9.      Family Care's piece rate and no overtime pay scheme violates the Fair Labor Standards Act (FLSA) and Connecticut Wage Act (CWA) by depriving Stokes and the other Patient Care Employees of the "time and a half" overtime wages they are owed for all hours worked in excess of 40 each workweek.

10.     Additionally, Family Care's piece rate and no overtime pay scheme violates the CWA by depriving Stokes and the other Patient Care Employees of earned wages, including overtime wages, (at their agreed hourly rates) for all hours worked.

## JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     The Court has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13.     This Court has general personal jurisdiction over Family Care because Family Care is a domestic limited liability company and maintains its principal place of business in Stratford, Connecticut.

14.     Venue is proper because Family Care maintains its principal place of business in Stratford, Connecticut, which is in this District. 28 U.S.C. 1391(b)(1).

## PARTIES

15.     Stokes has worked for Family Care as a registered nurse (RN) since approximately October 2023.

16.     Throughout his employment, Family Care has paid Stoked pursuant to its piece rate and no overtime pay scheme.

17.     Stokes' written consent is attached as **Exhibit 1**.

18.     Stokes brings this action on behalf of himself and other similarly situated employees who Family Care paid under its piece rate and no overtime pay scheme.

19.     The putative FLSA collective of similarly situated employees is defined as:

> **All Family Care employees who were paid under Family Care's piece rate and no overtime pay scheme at any time during the past 3 years through final resolution of this action ("FLSA Collective Members").**

20.     Stokes also seeks to represent such a class under the CWA pursuant to FED. R. CIV. P. 23.

21.     The putative Connecticut class of similarly situated employees is defined as:

> **All Family Care employees who were paid under Family Care's piece rate and no overtime pay scheme in Connecticut at any time during the past 2 years through final resolution of this action ("Connecticut Class Members").**

22.     The FLSA Collective Members and Connecticut Class Members are collectively referred to as the "Patient Care Employees."

23.     Family Care is a Connecticut limited liability company that maintains its headquarters in Stratford, Connecticut.

24.     Family Care may be served with process through its registered agent: **Rita C. Krett, 999 Oronoque Ln., Stratford, Connecticut 06614,** or wherever she may be found.

## COVERAGE UNDER THE FLSA

25.     At all relevant times, Family Care was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

26.     At all relevant times, Family Care was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

27.     At all relevant times, Family Care was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cell phones, computers, and PPE, that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

28.     At all relevant times, Family Care has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29.     At all relevant times, the Patient Care Employees were Family Care's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

30.     At all relevant times, the Patient Care Employees were engaged in commerce or in the production of goods for commerce.

### FACTS

31.     Family Care touts itself as "Connecticut's leading home care company . . . [w]ith four locations and over three hundred employees."[1]

32.     To meet its business objectives, Family Care hires employees, like Stokes and the other Patient Care Employees.

33.     Family Care pays Stokes and the other Patient Care Employees a piece rate based on the number and type of patient contacts they complete.

34.     Family Care labels Stokes' and the other Patient Care Employees' wages as "hourly."

35.     Family Care does not pay Stokes and the other Patient Care Employees overtime wages.

36.     But Stokes and the other Patient Care Employees are routinely required to work more than 40 hours a workweek.

---

[1] https://familycarevn.com/careers/ (last visited April 8, 2025).

37.     Instead of paying Stokes and the other Patient Care Employees at least 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek, Family Care often pays them at a *lower* rate for hours worked in excess of 40 a workweek.

38.     While exact job titles and duties may differ, these employees are subjected to the same or similar pay practice for similar work, Family Care's piece rate and no overtime pay scheme.

39.     For example, Stokes has worked for Family Care as an RN since approximately October 2023, based out of Family Care's Hampden, Connecticut office.

40.     As an RN, Stokes's job duties include driving to patients' homes, administering medications, assisting patients' movement, charting, drawing blood, setting up IVs, giving injections, speaking with and advising family about patient conditions, and returning charts and paperwork for lab tests to Family Care's office.

41.     Family Care schedules the visits Stokes is required to complete.

42.     The visit schedule set by Family Care requires Stokes to perform patient visits or drive between patient visits continuously throughout his workday with only a few minutes of downtime, if any at all, during a given workday.

43.     Indeed, Stokes regularly is forced to complete his charting at home at the end of his workday or on his "days off" because the demanding work schedule set by Family Care does not allow for sufficient time to chart patient visits before the next scheduled visit.

44.     The driving that Family Care requires Stokes to complete between visits throughout his workday is incidental to the performance of patient care job duties and predominantly benefits Family Care. *See* RSA § 31-60-10.

45.     Stokes typically works 11 to 12 hours a day and 5 to 7 days a week (55 to 84 hours a workweek).

46.     Family Care requires Stokes to utilize KanTime software to chart his patient visits.

47.    KanTime tracks the location and time the software program is opened, in use, and closed.

48.    Family Care agreed to pay Stokes $53 an hour.

49.    However, Family Care pays Stokes under its piece rate and no overtime pay scheme.

50.    Specifically, Family Care requires Stokes to complete what it designates as "30 points" worth of work to receive "40 hours" of pay each week, regardless of the actual number of hours he works during the workweek.

51.    Under Family Care's scheme, 1 point is equal to 1.33 hours of pay (40 hours/30 points=1.33).

52.    Thus, Family Care pays Stokes approximately $70.49 per point ($53/hour x 1.33=$70.49).

53.    Family Care assigns various types of patient contacts differing point values, regardless of how many hours of work a task actually requires to complete.

54.    Family Care assigns "skilled nursing visits" a value of "1 point," "medication administration" a value of "one-half point," and "start of care visits"/"resumption of care visits" a value of "2 points."[2]

55.    But after Stokes exceeds the 30-point/40-hour weekly productivity threshold, rather than paying him premium overtime wages, Family Care *reduces* his wage rate.

56.    For skilled nursing visits Stokes completes beyond the 30-point/40-hour productivity requirement, Family Care only pays him only $38, regardless of the number of hours he has worked that workweek and regardless of the actual number of hours the skilled nursing visit takes to complete.

---

[2] The point values assigned to a particular task occasionally varied to incentivize prompt completion of certain tasks.

57.     For example, during the December 15 to 21, 2024 pay period, Stokes performed 15 skilled nursing visits (labeled SNV on his paystub) above and beyond what Family Care designated as the base 30-point/40-hour workweek:

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| ADMISSIO | 75.00 | 3.00 | 225.00 | 6,000.00 |
| ADMISSIO | 150.00 | 1.00 | 150.00 | |
| HOLIDAY | | | | 1,696.00 |
| MA-MED | | | | 52.00 |
| ON CALL | | | | 300.00 |
| PTO | | | | 2,968.00 |
| REGULAR | 53.00 | 40.00 | 2,120.00 | 90,736.00 |
| SNV | 38.00 | 15.00 | 570.00 | 17,658.14 |
| **Gross Earnings** | | **59.00** | **3,065.00** | **119,410.14** |

| Taxes | | | Amount | YTD |
|---|---|---|---|---|
| CT | | | 155.31 | 6,020.82 |
| CTPFL-E | | | 14.18 | 564.47 |
| FITW | | | 479.69 | 18,067.07 |
| MED | | | 41.14 | 1,637.01 |
| SS | | | 175.89 | 6,999.56 |
| **Taxes** | | | **866.21** | **33,288.93** |

58.     Family Care assigns a skilled nursing visits a value of "1 point" toward reaching the 30-point/40-hour weekly threshold, which translates to $70.49 per skilled nursing visit, but Family Care paid him just $38 for each of these visits beyond that threshold.

59.     Thus, by the terms of its own system, Family Care paid Stokes a *lower* rate for hours he worked in excess of 40 during this workweek.

60.     In reality, Stokes was required to work much more than 40 hours to complete 30 points each workweek.

61.     Like Stokes, Family Paid the other Patient Care Employees under its piece rate and no overtime pay scheme.

62.     Like Stokes, Family Care likewise requires the other Patient Care Employees to record the number of "points" of work they perform.

63.     Like Stokes, the other Patient Care Employees regularly work more than 40 hours a workweek.

64.    And like Stokes, Family Care agreed to pay the other Patient Care Employees a set dollar amount for each hour of work.

65.    Indeed, like Stokes, the other Patient Care Employees typically work 11 to 12 hours a day and 5 to 7 days a week (55 to 84 hours a workweek).

66.    The visit schedule set by Family Care requires the other Patient Care Employees to perform patient visits or drive between patient visits continuously throughout their workdays with only a few minutes of downtime, if any at all, during a given workday.

67.    And Family Care likewise requires the other Patient Care Employees to utilize KanTime to chart their patient visits.

68.    And KanTime likewise tracks the location and time these employees open, use, and close the software.

69.    The other Patient Care Employees worked more than 40 hours in at least one workweek during the three years before this complaint was filed.

70.    Stokes and the other Patient Care Employees work in accordance with the schedule set by Family Care.

71.    When Stokes and the other Patient Care Employees work more than 40 hours in a workweek, Family Care does not pay them overtime wages of at least 1.5 times their regular rates of pay.

72.    In fact, like Stokes, Family Care pays the other Patient Care Employees at a *lower* rate for overtime hours Family Care designates as in excess of 40 a workweek.

73.    Family Care does not pay Stokes and the other Patient Care Employees on a "salary basis."

74.    That is, Family Care does not pay them a guaranteed sum on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work.

75. Family Care only pays Stokes and the other Patient Care Employees for the time they actually work (and really, only pays them for some of the time).

76. For example, during the November 12 to 18, 2023 pay period, Family Care paid Stokes for only "5 hours" of work:

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| REGULAR | 53.00 | 5.00 | 265.00 | 4,505.00 |
| **Gross Earnings** | | **5.00** | **265.00** | **4,505.00** |

| Taxes | | | Amount | YTD |
|---|---|---|---|---|
| CT | | | 0.00 | 225.56 |
| CTPFL-E | | | 1.33 | 22.53 |
| FITW | | | 0.00 | 635.90 |
| MED | | | 3.84 | 65.32 |
| SS | | | 16.43 | 279.31 |
| **Taxes** | | | **21.60** | **1,228.62** |

77. Stokes and the Patient Care Employees are non-exempt employees and, therefore, entitled to overtime wages.

78. But Family Care does not pay them overtime wages when they work more than 40 hours in a workweek, in violation of federal and Connecticut law.

CLASS AND COLLECTIVE ACTION ALLEGATIONS

79. Stokes brings his claims as a class and collective action on behalf of himself and the other Patient Care Employees.

80. The Patient Care Employees are uniformly victimized by Family Care's piece rate and no overtime pay scheme.

81. Other Patient Care Employees worked with Stokes and indicated they were paid in the same manner, performed similar work, and were subject to Family Care's same piece rate and no overtime pay scheme.

82. Based on his experience with Family Care, Stokes is aware Family Care's piece rate and no overtime was imposed on other Patient Care Employees.

83.    The Patient Care Employees are similarly situated in the most relevant respects.

84.    Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime.

85.    Any relevant exemption defense would require Family Care to pay the Patient Care Employees on a salary basis.

86.    Because Family Care fails the salary basis test with respect to the Patient Care Employees, the specific job duties performed by them are largely irrelevant.

87.    The only relevant issue is whether the Patient Care Employees worked more than 40 hours in a workweek.

88.    Therefore, the specific job titles or job locations of the various Patient Care Employees do not prevent class or collective treatment.

89.    Rather, Family Care's piece rate and no overtime pay scheme renders Stokes and the other Patient Care Employees similarly situated for the purpose of determining their right to overtime pay.

90.    Family Care's records reflect the number of hours/points recorded worked each week by the Patient Care Employees.

91.    Family Care's records also show what it paid the Patient Care Employees and how it paid the Patient Care Employees, including for hours they worked in excess of 40 a workweek.

92.    The back wages owed to Stokes and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

93.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Family Care's records, and there is no detraction from the common nucleus of liability facts.

94.    Therefore, the issue of damages does not preclude class or collective treatment.

95.     Stokes' experiences are therefore typical of the experiences of the Patient Care Employees.

96.     Stokes has no interest contrary to, or in conflict with the other Patient Care Employees.

97.     Like each Patient Care Employee, Stokes has an interest in obtaining the unpaid wages owed under federal and Connecticut law.

98.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of this action.

99.     Absent this class and collective action, many Patient Care Employees will not obtain redress for their injuries, and Family Care will reap the unjust benefits of violating the FLSA and Connecticut law.

100.    Further, even if some of the Patient Care Employees could afford individual litigation, it would be unduly burdensome to the judicial system and Family Care.

101.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

102.    The questions of law and fact that are common to each Patient Care Employee predominate over any questions affecting solely the individual members.

103.    Among the common questions of law and fact are:

     a.     Whether Family Care applied its piece rate and no overtime pay scheme to the Patient Care Employees;

     b.     Whether the Patient Care Employees are non-exempt employees entitled to overtime wages;

     c.     Whether Family Care's piece rate and no overtime pay scheme satisfies the "salary basis" test;

d.      Whether Family Care's piece rate and no overtime pay scheme deprived the Patient Care Employees of premium overtime wages they are owed under the FLSA and/or Connecticut law;

e.      Whether Family Care's decision not to pay the Patient Care Employees overtime wages was made in good faith; and

f.      Whether Family Care's FLSA violations were willful?

104.     As part of its regular business practices, Family Care intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Patient Care Employees.

105.     Family Care's piece rate and no overtime pay scheme deprived Stokes and the other Patient Care Employees of the overtime wages they are owed under federal and Connecticut law.

106.     There are many similarly situated Patient Care Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

107.     This notice should be sent to the Patient Care Employees pursuant to 29 U.S.C. § 216(b).

108.     The Patient Care Employees are known to Family Care, are readily identifiable, and can be located through Family Care's business and personnel records.

**FAMILY CARE'S VIOLATIONS WERE WILLFUL**

109.     Family Care knew it was subject to the FLSA's overtime provisions.

110.     Family Care knew the FLSA required it to pay non-exempt employees, including the Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

111.    Family Care knew each Patient Care Employee worked more than 40 hours in at least one workweek during the three years before this complaint was filed because it expected and required them to do so.

112.    Family Care knew the Patient Care Employees were its employees.

113.    Family Care knew the Patient Care Employees were non-exempt from overtime.

114.    Family Care knew it paid the Patient Care Employees pursuant to its piece rate and no overtime pay scheme.

115.    Family Care knew it did not pay the Patient Care Employees on a "salary basis."

116.    Family Care knew it needed to pass the salary basis test to qualify for any exemptions it might claim with respect to the Patient Care Employees.

117.    Nonetheless, Family Care refused to pay Patient Care Employees overtime wages when they work in excess of 40 hours a workweek.

118.    Family Care's failure to pay Stokes and the other Patient Care Employees overtime wages was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

119.    Family Care knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

120.    Family Care knowingly, willfully, and/or in reckless disregard carried out its piece rate and no overtime pay scheme that deprived the Patient Care Employees of premium overtime wages in violation of the FLSA.

## COUNT I

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

121.    Stokes brings his FLSA claim on behalf of himself and the FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

122.    Family Care violated, and is violating, the FLSA by employing non-exempt employees (Stokes and the other FLSA Collective Members) in a covered enterprise for workweek longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek.

123.    Because Family Care knew or showed reckless disregard for whether its piece rate and no overtime pay scheme violated the FLSA, it owes Stokes and the other FLSA Collective Members these wages for at least the past 3 years.

124.    Family Care's unlawful conduct harmed Stokes and the FLSA Collective Members by depriving them of the overtime wages they are owed.

125.    Accordingly, Stokes and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE CWA
### (CONNECTICUT CLASS)

126.    Stokes brings his CWA claim on behalf of himself and the Connecticut Class Members pursuant to FED. R. CIV. P. 23.

127.    The conduct alleged in this complaint violates the CWA. C.G.S.A. § 31-58, *et seq.*

128.    At all relevant times, Family Care was an "employer" within the meaning of the CWA. *See* C.G.S.A. § 31-58(d).

129.    At all relevant times, Family Care employed Stokes and the Connecticut Class Members as "employees" within the meaning of the CWA. *See* C.G.S.A. § 31-58(e); *see also* C.G.S.A. § 31-58(g).

130.    The CWA requires employers, like Family Care, to pay employees, including Stokes and the Connecticut Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek. *See* C.G.S.A. § 31-60.

131.    Family Care violated, and is violating, the CWA by failing to pay Stokes and the Connecticut Class Members overtime wages for all hours worked after 40 each workweek. *See* C.G.S.A. § 31-60.

132.    Family Care's unlawful conduct harmed Stokes and the Connecticut Class Members by depriving them of the overtime wages they are owed.

133.    Accordingly, Stokes and the Connecticut Class Members are entitled to recover their unpaid overtime wages, plus penalty damages in an amount equal to their unpaid overtime wages, as well as attorney's fees, costs, interest at 10% a year, and expenses. *See* C.G.S.A. §§ 31-68(a)(1) and 37-3a.

## COUNT III

### FAILURE TO PAY ALL WAGES UNDER THE CWA
### (CONNECTICUT CLASS)

134.    Stokes brings his CWA claim on behalf of himself and the Connecticut Class Members pursuant to FED. R. CIV. P. 23

135.    The conduct alleged in this complaint violates the CWA. C.G.S.A. §§ 31-70, *et seq.*

136.    At all relevant times, Family Care was an "employer" within the meaning, and subject to the requirements, of the CWA. *See* C.G.S.A. § 31-71a(1).

137.    At all relevant times, Family Care employed Stokes and the Connecticut Class Members as "employees" within the meaning of the CWA. *See* C.G.S.A. § 31-71a(2).

138.    The CWA requires employers, like Family Care, to pay employees, including Stokes and the Connecticut Class Members, all their earned wages, including overtime wages, for all hours worked at the rate agreed to by the parties. *See* C.G.S.A. §§ 31-71a(3) and 71b.

139.    During the course of their employment, Family Care agreed to pay Stokes and each Connecticut Class Member an hourly rate for hours worked.

140.    Stokes and each Connecticut Class Member accepted Family Care's offer.

141.    But during the course of their employment, Family Care failed to pay Stokes and the Connecticut Class Members for all the time they worked at the rates Family Care agreed to pay them because Family Care paid them under its piece rate and no overtime pay scheme, which resulted in payment of wages, including overtime wages, below what Family Care agreed to pay these employees.

142.    Family Care violated, and is violating, the CWA by failing to pay Stokes and the Connecticut Class Members all wages earned (at their agreed hourly rates) for all the hours of work they performed. *See* C.G.S.A. § 31-71b.

143.    Family Care's failure to pay Stokes and the Connecticut Class Members all wages earned (at their agreed hourly rates) for all the hours of work they performed, including overtime hours, was not the result of a *bona fide* dispute. *See* C.G.S.A. § 31-71d.

144.    Family Care's unlawful conduct harmed Stokes and the Connecticut Class Members by depriving them of the earned wages they are owed.

145.    Accordingly, Stokes and the Connecticut Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), plus penalty damages in an amount equal to their unpaid wages, as well as attorney's fees, costs, interest at 10% a year, and expenses. *See* C.G.S.A. §§ 31-72 and 37-3a.

## JURY DEMAND

146.    Stokes demands a trial by jury on all counts.

## RELIEF SOUGHT

WHEREFORE, Stokes, individually and on behalf of the Putative Class Members, seeks the following relief:

a.  An Order designating this action as a collective action and providing for the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.  An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.  An Order appointing Stokes and his counsel to represent the interests of the Patient Care Employees;

d.  An Order pursuant to Section 16(b) of the FLSA finding Family Care liable for unpaid overtime wages due to Stokes and the other FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid overtime wages;

e.  An Order finding Family Care liable to Stokes and the other Connecticut Class Members for unpaid overtime wages owed under the CWA, plus penalty damages in an amount equal to their unpaid overtime wages;

f.  An Order finding Family Care liable to Stokes and the Connecticut Class Members for unpaid earned wages owed under the CWA, plus penalty damages in an amount equal to their unpaid wages;

g.  Judgment awarding Stokes and the Putative Class Members all unpaid wages, liquidated damages, penalty damages, compensatory damages, and other penalties available under the FLSA and CWA;

h.  An Order awarding attorney's fees, costs, and expenses;

i.  Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Dated: April 14, 2025

Respectfully submitted,

**HAYBER MCKENNA & DINSMORE, LLC**

By: _/s/ Richard E. Hayber_
Richard E. Hayber Fed Bar No. ct11629
750 Main Street, Suite 904
Hartford, Connecticut 06103
Phone: (860) 522-8888
Fax: (860) 218-9555
Email: rhayber@hayberlawfirm.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
Email: mjosephson@mybackwages.com
Email: adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Email: rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR STOKES &**
**THE PATIENT CARE EMPLOYEES**

# EXHIBIT 1

**CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Benjamin Stokes

1.  I hereby consent to make a claim against ___Family Care Visiting Nurse___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of any agreements concerning settlement, attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___Family Care Visiting Nurse___.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Benjamin Stokes (Feb 21, 2025 15:25 EST)_     Date Signed: Feb 21, 2025